HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MATTHEW MAY,<br><br>    Plaintiff,<br><br> v.<br><br>ALS GROUP USA, CORP.,<br><br>    Defendant. | CASE NO. C16-5954 RBL<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT<br><br>[Dkt. # 32] |

  THIS MATTER is before the Court on defendant ALS Group's Motion for Complete Summary Judgment [Dkt. # 32] and on Plaintiff May's responsive Motion to Voluntarily Dismiss his federal law claims and remand the remaining state law claims to state court [Dkt. # 35]. The case was filed in 2016. The dispositive motion deadline was February 6 [Dkt. # 15]. Both pending motions were filed March 22, and trial is scheduled[1] for May 7.

  May was employed by ALS as a scientist. In July 2012 May was found asleep at his desk three times in one week, ALS sent him home and asked him to see a doctor. He returned with a preliminary diagnosis of obstructive sleep apnea, and ALS asked him to undergo the sleep study his doctor recommended. Nevertheless, his doctor and ALS permitted him to return to work.

---

[1] The Court recently granted a continuance for reasons outside the issues raised in these motions.

May did not follow through on the sleep study (until almost three years later, after he was terminated). In the meantime, he continued to have a "poor (2 out of 5) attitude" and he continued make mistakes and to frequently fall asleep at work. ALS claims May admits he did so, that he sometimes spilled hot tea on himself, and that he once fell asleep while writing on a small sample vial, which he dropped.

In June 2014 ALS placed May on probation, and issued him a written "corrective action form" outlining four areas of concern, one of which was specifically "sleeping at work" and related performance issues. He was told that if his performance did not improve he would be terminated. ALS claims May never asked for any sort of accommodation and instead said he would get the sleep study. It claims May's performance did not improve and it fired May on July 21, 2014.

In November 2016, May sued in state court, asserting claims under the ADA and the WLAD. He claims he was terminated for the symptoms of his disability, sleep apnea. May also claimed he was wrongly discharged in violation of public policy, and asserts claims for intentional and negligent infliction of emotional distress. ALS timely removed the case here based on the federal question (ADA) presented on the face of the complaint.

ALS seeks "complete" summary judgment, arguing that May cannot establish he was a qualified individual (ADA) or that he was doing satisfactory work (WLAD). It argues that even if he could, it had a legitimate, non-discriminatory reason for firing him: his performance was lacking and his falling asleep in the lab was dangerous for him and others. ALS claims May cannot meet his *McDonnel Douglas* burden of demonstrating that his termination one these bases was pretextual.

In response, May seeks to voluntarily dismiss[2] his federal (ADA) claims and asks the Court to remand the case to state court. ALS opposes that effort, claiming prejudice from the passage of time, its pending dispositive motion, and the impending trial date. It also argues that the parties are diverse and the amount in controversy exceeds the jurisdictional limit, so the court has diversity jurisdiction, even if May's federal claims are dismissed.

May also argues that he undertook "remedial measures" regarding his sleep apnea in 2013, and that he worked "without incident" until 2014, when he admits he again made mistakes because of his sleep-apnea related fatigue.

May claims that in response to his written warning, he made an appointment for the sleep study, but was fired before it was completed. He claims ALS failed to engage in any "interactive process" to ascertain what reasonable accommodation might be effective; it instead told him he was not "covered" by the ADA because his diagnosis was only preliminary and he had failed to follow up with the sleep study. He claims he was terminated for displaying the symptoms of his disability, in violation of the ADA and the WLAD.

**A. Motion to Dismiss/Remand**

May's Motion to Voluntarily Dismiss (without prejudice) his Federal Claims and for Remand is DENIED. It is simply too late in the process, and there is a dispositive motion pending. It is not fair to the defendant to permit this delay tactic after this much work and this close to a resolution through either the motion or the trial. Remanding the case would obviously delay that resolution months, if not years.

---

[2] May claims that discovery led him to conclude that his ADA claim was lacking, but the elements of that claim and his state law WLAD claim are effectively identical.

**B. Motion for Summary Judgment**

    1. <u>Standard.</u>

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. 242, 248 (1986).

2. <u>Disability Discrimination Claims under ADA and WLAD.</u>

ALS's Motion for Summary Judgment is more troublesome. It is apparent that May had sleep, fatigue and performance issues, and that ALS and May both at least suspected that they were caused by obstructive sleep apnea. Both parties focus on May's need for (and the lack of) a full sleep study to confirm that diagnosis, but such a study, in and of itself, is not a "cure" for May's fatigue; it would (at best) only have confirmed the cause of his fatigue problems in an effort to treat them. May inexplicably delayed the sleep study, but he has established for purposes of summary judgment that he suffers from a disability (sleep apnea); and that its symptoms—repeatedly falling asleep around dangerous chemicals in his working lab—played a significant role in his termination.

The elements of May's claims under the ADA and the WLAD are substantially similar. *See McElwain v. Boeing Co.*, 244 F. Supp. 3d 1093, 1098–99 (W.D. Wash. 2017):

> Although "[j]udicial interpretations of the ADA and the WLAD differ slightly in the way they phrase the elements of an accommodation under the two statutes ... the basic requirements are essentially the same." Both statutes require the plaintiff to show that (1) he is disabled; (2) he is qualified for the job in question and capable of performing it with reasonable accommodation; (3) the employer had notice of his disability; and (4) the employer failed to reasonably accommodate his disability. *McDaniels v. Grp. Health Co–op*, 57 F.Supp.3d 1300, 1314 (W.D. Wash. 2014) (internal citations omitted).

ALS argues that May cannot meet his initial burden because he was not a "qualified individual" (under the ADA) and he was not "doing satisfactory work" (under the WLAD)—he could not safely perform the essential functions of his job. He was warned repeatedly over more than two years that falling asleep in the lab was unacceptable, and while he may have tentatively identified his underlying problem, he did nothing to follow up, and he did not ever seek any accommodation. It also points out that whether due to fatigue or otherwise, May made many mistakes and he was repeatedly warned about them before he was fired.

May argues that his performance evaluations demonstrate that he was "qualified" for his job, and that ALS was on notice of his disability and its symptoms. The core of his response is that ALS was obligated to engage in an "interactive process" to determine whether a reasonable accommodation could be made. He correctly claims that the "interactive process should be flexible" and that it "envisions an exchange between employer and employee, where each seeks and shares information to achieve the best match between the employee's capabilities and the available positions." Dkt. # 40 at 9, *citing Davis v. Microsoft Corp.*, 109 Wn. App. 884 (2002).

May claims that once he put ALS on notice of his disability, ALS had an obligation to determine its nature and extent. By necessary implication, he argues that he did *not* have any obligation to do so, and it is clear that he did not do so. He obtained a preliminary sleep apnea diagnosis that included instructions to have a sleep study. He informed ALS of the diagnosis and the recommendation, and ALS reiterated that he needed to get the sleep study. For reasons he does not attempt to explain, he did not do so for more than two years (until after he was fired). He did not suggest (and still has not suggested) any accommodation that could alleviate the admittedly negative impact of his disability on his job performance. In the meantime, his work continued to suffer; indeed, ALS demonstrates that his performance *declined* from 2012 to 2014.

ALS argues, persuasively, that it is not enough as a matter of law for May to "inform it" of his preliminary diagnosis, to fail to follow up and confirm that diagnosis (as both his doctor and ALS encouraged him to do), to fail to ever suggest any sort of accommodation, and to then put the onus on ALS to figure out what could be done while his work deficiencies continued. It cites a recent, similar case from this District holding that a sleep apnea sufferer could not establish that he was able to perform the essential functions of his job when he was asleep. *See Gilmore v. Boeing Co.*, No. C16-1617MJP, 2018 WL 883875 (Feb. 14, 2018).

1     ALS also argues that May cannot establish that he notified it of his need for
2 accommodation, and that that failure is fatal to his claim that ALS was required to engage in the
3 interactive process to find a reasonable accommodation. It cites a series of cases logically
4 concluding that summary judgment is appropriate where the employee cannot establish he
5 notified his employer of a serious medical condition, and fails to provide any medical
6 documentation that some sort of accommodation is required. May provided ALS only a 2012
7 medical document stating he *could* return to work, without restriction. It also points out that its
8 ADA policy required May to make a request for reasonable accommodation to the HR
9 department, and May never did so. Thus, it claims, its obligation to engage in the interactive
10 process was not triggered. *See Gilmore, id*. at *5 ("Where the employer has established
11 reasonable procedures for making and handling accommodation requests, it may expect its
12 employees to utilize those procedures absent extenuating circumstances.")

13     Finally, ALS also argues, again persuasively, that May has failed to substantively
14 respond to its related, affirmative "business necessity" defense, which it pled and upon which its
15 motion is partially based. Under the ADA, "[i]t may be a defense to a charge of discrimination
16 under this chapter that an alleged application of qualification standards, tests, or selection criteria
17 that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a
18 disability has been shown to be job-related and consistent with business necessity, and such
19 performance cannot be accomplished by reasonable accommodation, as required under this
20 subchapter." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 989 (9th Cir. 2007) (quoting 42
21 U.S.C. § 12113(a)). *See also Littlefield v. Nevada, ex. rel. Dep't of Pub. Safety*, 195 F. Supp. 3d
22 1147, 1158–59 (D. Nev. 2016).

May simply points out that other employees were on "alternate schedules," but he does not even claim that such a schedule is the accommodation he seeks. Even now, May has not articulated any potential accommodation for him to continue his job as a "senior scientist," working daily around dangerous chemicals while repeatedly falling asleep and making mistakes due to his possibly-sleep-apnea-caused fatigue. ASL argues that May's fatigue was a direct threat to the safety of himself and others, and that May concedes that safety was a factor in his termination.

For each of these reasons, the Court concludes that May has failed to establish a *prima facie* case of disability discrimination under the ADA or the WLAD because he has not meet his summary judgment burden of demonstrating that he was a qualified individual capable of performing his job, with or without reasonable accommodation. ALS's Motion for Summary Judgment [Dkt. # 32] on these claims is GRANTED and they are DISMISSED with prejudice.

3. <u>Wrongful termination in violation of public policy.</u>

ALS also seeks summary dismissal of May's alternate wrongful discharge in violation of public policy claim. It argues that where, as here, this "catch all" claim is based solely on deficient ADA and WLAD claims, it cannot stand alone. As ALS points out, this Court has previously rejected such a wrongful discharge claims where they are based on the same public policy that the ADA and WLAD are expressly designed to protect: discrimination in the workplace. ALS's Motion for Summary Judgment on this claim is GRANTED and it is DISMISSED with prejudice.

4. <u>Emotional Distress</u>

Finally, ALS asks the Court to dismiss on summary judgment May's negligent and intentional infliction of emotional distress claims. It argues that termination alone cannot support an "outrage" claim, and that the negligence claim is (like the wrongful termination claim) based

exclusively on the elements of his ADA and WLAD claims. The court agrees and these alternate claims are similarly DISMISSED with prejudice.

ALS's request for attorneys' fees because Mays' claim was "frivolous" is DENIED. All other pending motions are DENIED as moot. The matter is closed.

IT IS SO ORDERED.

Dated this 19th day of April, 2018.

*Ronald B. Leighton*
Ronald B. Leighton
United States District Judge